(41 Misc. Rep. 346.)

### In re BURDICK et al.

(Surrogate's Court, Erie County. August, 1903.)

**1. GUARDIAN—APPOINTMENT OF WIDOW.**
Except for sufficient reasons given, a widow cannot be denied appointment as guardian for her infant children, with a right to the custody of their persons and the care of their estates.

In the matter of the application of Marion Burdick for the appointment of a general guardian, and in the matter of the application of Alice Hull Burdick to be appointed guardian of Alice Burdick and Carol Lewis Burdick. Letters granted.

Hartzell & Hartzell, for petitioners.
S. M. Wing (George C. Miller, of counsel), for next of kin.

¶ 1. See Guardian and Ward, vol. 25, Cent. Dig. § 25.

MARCUS, S.  The guiding principle of law in matters of this kind is simply and solely the welfare of the infants.  That alone is the criterion by which must be determined to whom the custody of a child shall be awarded.  The welfare of the child is paramount to all other considerations.  In determining the question of custody, the choice of the child, if of sufficient capacity, is of important consideration.  The proposition is too well settled for the citation of authorities for an examination by the court on its own account to ascertain the wish and inclination of a child.  In order to satisfy myself as to the wishes of these children in respect to their present and future custody and control, and as to the degree of their intelligence and capacity to make a proper choice, I have had, following established precedent, a private interview with them; and I conclude that their choice is voluntary and uninfluenced by any person, and that it is the result of natural attachment to the only home they have known.  I am further confirmed that their choice is entirely natural.  The inquisitorial power of the court to inquire into the character and conduct of a parent is often delicate and difficult, and its exercise brings to light numerous family differences, difficulties, and misfortunes, which it were "better for the honor of humanity to cover with the thickest veil of charitable silence."  A parent may be in narrow circumstances, negligent, injudicious, and faulty, from whom the discreet, intelligent, and well disposed, in the exercise of their judgment would wish their children to be removed, for their own sakes; the parent, possessing all such faults, yet may not be subject to judicial interference; and it almost seems, for obvious reasons, it is well that it should be so.  By common consent, by nature and nurture, and in accordance with the dictates of humanity, a mother is regarded as the guardian of her infant children.  A mother is better calculated to train and protect them in sickness and in health, and in their years of infancy, than a stranger.  The natural attachment that exists between a mother and her offspring is such as no other person or relative can have or feel.  There is no application on behalf of any person other than the mother to be made the guardian of these children.  The opposition is to the end that the mother be not made the guardian.

The minutes in the inquest proceeding taken before the police judge of this city have been offered in evidence, in so far as they may be applicable.  Objections have been raised that the same is not evidence to be received in a legal tribunal, since the proceeding was an inquest, and the testimony given under excitement and duress; that it was incompetent, immaterial, and irrelevant; and that it relates to past events that have no bearing upon, and are unrelated to, the present application for letters of guardianship.  My views, however, if this testimony were received, would be in no way influenced.  The rejection of such testimony brings the matter before me without any evidence on the part of the objectors; yet, if such testimony were received, on the broader grounds of this proceeding, I still believe that for the protection of these children the court should reach out its strong arm, and terminate the unsettled condition of their lives, through which they have been made to be the real

sufferers. Conscience bids that these children have the comfort of their mother, which their affection and attachment now so strongly call for, by a ratification of this court. They have spoken in no uncertain terms. Voluntarily and eagerly have they implored for the appointment of their mother. Their language has been the strong and convincing language of nature, the natural language of hearts appealing for the one they desire as their guardian. I am not convinced that a stranger in blood should have the guardianship of these children. To place them under the control of strangers would bequeath to them a sense of injury and injustice in being deprived of the companionship of their mother, surely marring their contentment and happiness, and seriously influencing the later years of their life. In this latter view I am re-enforced by the fact that these infant children are girls. The matter as presented to me justifies no such course. I am mindful that, even where defects are sometimes observed in parental training, it does not always appear that strangers influenced by more correct and rigid notions would succeed, and the experience of life has proven it to be unfair to always lay the waywardness of children upon the parents. There can rarely be certainty in the disposition of matters of this kind, where the future is so distant and remote. I am profoundly impressed with the great advantages which exist in parental relation. The care of kindred or strangers can offer no corresponding compensation, and I am deeply impressed that the separation of these children from their mother would be most cruel and unwise. The right of the mother to be the guardian of her children immediately attaches on the death of the father, and, when invoked, demands the legal protection of the court, which should be given unhesitatingly, except for sufficient reasons.

Letters of guardianship of the persons and properties of the infants may be granted to the petitioner upon the filing of a proper surety bond, to be approved by the court, in double the amount of money received. The management of the estate is a feature of the case which need not be discussed, since the guardian is at all times amenable to the direction of the surrogate.

Decreed accordingly.